**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES BOATWRIGHT AND JANICE BOATWRIGHT,** | * | |
| | * | |
| | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **CASE NO.:_____** |
| | * | |
| **BON SECOUR DEVELOPMENT, L.L.C., CARNEY REALTY, INC., SHIRLEE POULOS, and THOMAS BEALLE & ASSOCIATES, INC., and MORTGAGE SOLUTIONS SOUTH, LLC,** | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| **Defendants.** | * | |

## COMPLAINT

Come now the Plaintiffs, James and Janice Boatwright (hereinafter "Plaintiffs" or "Boatwrights"), by and through undersigned counsel, and in support of their claims for relief against Defendants state as follows:

### I. JURISDICTION & VENUE

1.      This action is brought pursuant to the provisions of the *Interstate Land Sales Full Disclosure Act* ("ILSFDA"), 15 U.S.C. § 1701, et seq., the *Racketeer Influence and Corrupt Organizations Act* ("RICO"), 18 U.S.C. § 1961, et seq, state law claims under the *Alabama Uniform Condominium Act*, ("AUCA"), § 35-8A-101, et seq., common law claims for breach of fiduciary duties, fraudulent inducement, negligence, wantonness, and conspiracy.  Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, with resulting supplemental jurisdiction over Plaintiffs' sate

law claims pursuant to 28 U.S.C. § 1367.  As complete diversity of citizenship exists among Plaintiffs and Defendants, and the requisite amount in controversy, this Court also has jurisdiction of the subject matter and parties pursuant to 28 U.S.C. § 1332, and to the extent necessary, based on ancillary and/or pendent jurisdiction.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as all defendants reside in Alabama, a substantial part of the events or omissions which give rise to Plaintiffs' claim occurred in this district.

## II. PARTIES

3.      Plaintiffs, JAMES AND JANICE BOATWRIGHT ("Plaintiffs" or "Boatwrights"), are married individuals over the  age of nineteen (19) years and are residents of the state of Georgia.

4.      Defendant, BON SECOUR DEVELOPMENT, L.L.C. (hereinafter "Bon Secour") is an Alabama  limited liability company with its principal place of business in Baldwin County, Alabama.  Its registered agent is Steve H. Bryan, 16850 County Road 6 Ext., Gulf Shores, Alabama 36542.  Defendant Bon Secour was the developer of Sunset Bay at Bon Secour ("Sunset Bay").

5.      Defendant, CARNEY REALTY, INC.,  (hereinafter "Carney") is an Alabama corporation with its principal place of business in Baldwin County, Alabama.  Its registered agent is Shirlee J. Poulos, 500 West Beach Blvd., Gulf Shores, AL 36542.  Carney was the exclusive real estate broker for Sunset Bay.

6.      Defendant, SHIRLEY POULOS, (hereinafter referred to as "Poulos"), is an individual over the age of nineteen (19) years, with her principal place of residence as Baldwin County, Alabama. Poulos is a licensed real estate agent and is believed to be an employee, agent or shareholder in Carney. Poulos was the exclusive agent and/or broker for Sunset Bay.

7.      Defendant THOMAS BEALLE ASSOCIATES, INC. ("TB") is an Alabama Corporation.  It is duly registered to transact business in Alabama.  Its principal place of business is 1702 B Government Street, Mobile, AL 36604.  Its registered agent is Thomas Bealle at the same address.   Defendant MORTGAGE SOLUTIONS SOUTH, LLC ("MSS") is an Alabama limited liability company.  Its principal place of business is in Baldwin County, Alabama.  Its registered agent is James Lynn Perry, 30421 HWY 181 Malbis Plantation Parkway, Daphne, AL 36526.  TB was the appraiser and MSS was the mortgage company that Defendants Bon Secour, Carney, and Poulos instructed their customers to use.

## FACTUAL ALLEGATIONS

8.      Janice and James Boatwright are an elderly married couple who are long time residents of Buchanan, Georgia.  They had never invested in preconstruction condominiums before being approached by Defendants Poulos, Carney, and Bon Secour.

9.      Defendants Bon Secour, Poulos, and Carney used the U.S. Mail system, internet, interstate telephone lines, electronic mail and other means to market and promote a residential and condominium development in Gulf Shores, Alabama, called Sunset Bay at Bon Secour ("Sunset Bay").  The development was located between Oyster Bay and Bon Secour Bay in Gulf Shores, Alabama.  It would be compromised of 48 residential home lots, 40 initial condominium units, and then another 50 condominium units.  There would also be at least 75 boat slips.  Thus, there were 138 units/lots marketed by Defendants Bon Secour, Poulos, and Carney.

10.     The initial 40 condominium units were built in two separate condominium structures called Sunset Bay at Bon Secour, Island Villas I and Island Villas II.

11.     In the fall of 2005, Defendants Poulos, Carney and Bon Secour approached the

Boatwrights about investing in a preconstruction condominium unit at Sunset Bay.

12.     Poulos, Bon Secour, Carney, and/or representatives of Bon Secour represented that the condominium units at Sunset Bay were all sold except one unit, Unit 605 in Island Villas I.  They represented that this was the showcase unit.  They represented, via U.S. mail, interstate telephone, facsimile, electronic mail and other means, to the Boatwrights that they would never have to close on their unit, that they were already lining up "end purchasers", and that if they did not buy right now they would not be able to invest in the condominiums at preconstruction prices.  Defendants represented to the Boatwrights that they would simply have to sign paperwork for a "simultaneous closing" and that they would never have to actually close on the unit. Defendants further represented that this was the only unit available at the preconstruction price. Defendants made said representations of material fact knowing that they were false and with the intent to induce Plaintiffs to invest and purchase a preconstruction condominium unit.

13.     The Boatwrights informed Carney and Poulos that they were looking to invest in the condominiums as an investment to make a profit.  Carney, Poulos and Bon Secour represented to the Boatwrights that they guaranteed they would make a profit on their investment, the only question was how much profit they would make.  They also assured the Boatwrights that they had the power to control the price of the units and they would not allow the prices to decrease at all. Poulos, Carney and Bon Secour told the Boatwrights that investing in Bon Secour was the best investment decision they could make, that people were already making money because the lots were increasing in value so quickly, and were still climbing.  Carney, Poulos and Bon Secour further represented that they would never discount any lot or unit, that the prices would never be reduced under any circumstances.

14.     When plaintiffs visited Poulos at the sales office on site at Sunset Bay, there were "sold out" signs everywhere.  In fact, the units were not sold out.

15.     Plaintiffs made it clear to Poulos and to Bon Secour that they intended and were investors in Sunset Bay and did not intend to hold onto the property through construction, live in the property, or use the property as a vacation home. It was their desire to resell the unit they contracted to purchase to another purchaser.

16.      Carney and Poulos further represented to the Boatwrights that they would represent the Boatwrights as their agent, and make sure they made the most profit possible from their investment.

17.     Poulos and Carney were to act as Plaintiffs' realtor not only for the purchase of the preconstruction unit but also to assist in conveying and selling the unit to a subsequent investor or purchaser.  Poulos advised the Boatwrights to not resell right away, but hang on to the unit for awhile so that they would make more money.

18.      It was represented to the Plaintiffs by the Defendants that the condominium development at Sunset Bay was to be constructed in a style, manner and workmanship consistent with the rest of the Sunset Bay at Bon Secour development, being houses and structures in the immediate area and planned development related thereto, which was to be the same materials and design, general appearance and to be constructed in a reasonable appearance and quality thereof to make the units desirable for investors, subsequent purchasers, and as vacation homes and/or rental investment properties.

19.     On or about October 3, 2005, based on the representations of material fact, the Boatwrights entered into a preconstruction purchase and escrow agreement for Unit 605 of Sunset

Bay Island Villas I with the Defendant Bon Secour in reliance on the representations made to Plaintiffs by Defendants Bon Secour, Poulos, and by and through their agents.   The total purchase price was $659,900.00.   The agreement obligated the Boatwrights to pay a 20% earnest money deposit in the form of an irrevocable bank letter of credit or, alternatively, a cash deposit.   The Boatwrights provided a letter of credit in the amount of $131,980.00 representing 20% of the purchase price.

20.   Throughout 2005 and 2006 the Plaintiffs continued to communicate with Carney and Poulos that they wanted to sale the unit and relied on her to find an investor or buyer for the unit. Poulos and Carney advised not to sale right now because the prices were only going up, and that they would make more money if they waited.   In reality, Carney, Poulos and Bon Secour had not sold all the units at preconstruction, did not have any other buyers, and knew the prices were not going up.

21.   Defendants Carney, Poulos and Bon Secour continued to make the misrepresentations and suppress the true facts related to the failing development throughout this time.   In September 2006, Defendant Poulos represented to the Boatwrights that numerous purchasers were interested in the Boatwrights' unit.   Specifically, two couples were "very serious." In December 2006, Defendants Poulos, Carney and Bon Secour again represented to the Boatwrights their investment was safe, that the prices were only going up, that the plaintiffs' expectations about their investment would be met, and that the Boatwrights would also be able to take advantage of the GO Zone Act as a rental property.

22.   In summer 2007, the Boatwrights inspected unit 605 and found several problems with the unit.   Poulos again represented that all the units were sold out, but she thought she may be able to "pull some strings" to get the Boatwrights into unit 705, which was immediately above theirs.

Defendants represented that Unit 705 was sold to other investors when it was not.  Defendants suppressed the facts that Unit 705 was open, ready and available.  Defendants induced them to enter into a separate preconstruction purchase and escrow agreement for Unit 705 of Sunset Bay.

23.     The Defendants' "act" became so extravagant that Defendant Poulos feigned emotion and began crying to the Boatwrights telling them that they just did not appreciate how hard it was and all the work she had done to get them into Unit 705.  And again informed they that they were going to make so much money, and they just did not realize how much she was doing for them.

24.     Defendants Poulos, Bon Secour, Carney, and/or representatives of  Bon Secour, again misrepresented that the condominium units at Sunset Bay were all sold, that the Boatwrights would never have to close on their unit, that they were already lining up "end purchasers," and that the Boatwrights would simply have to sign paperwork for a "simultaneous closing" to take place. When plaintiffs visited Poulos at the sales office on site, there were still "sold out" signs everywhere.

25.     In reliance on the representations and suppressions of material fact, on or about August 8, 2007, the Boatwrights and Defendant Bon Secour executed an agreement terminating the previous contract and stating that its terms would be "of no further force and effect."  It further stated that the last of date of execution, being August 8, 2007, shall be deemed the Effective Date.  Further, on August 8, 2007, in reasonable reliance on the representations and suppressions, the Boatwrights and Bon Secour executed the separate Purchase and Escrow Agreement for Unit 705.   The total purchase price was $669,900.00.  The agreement obligated the Boatwrights to pay a 20% earnest money deposit in the form of an irrevocable bank letter of credit or, alternatively, a cash deposit. The Boatwrights provided a letter of credit in the amount of $133,980.00 representing 20% of the purchase price.

26.     In early September 2007, Defendants notified the Boatwrights that it was time to close on their Unit 705.  They represented to the Boatwrights that all the investors would be invited to a party to celebrate their great investment.  Defendants also represented that the Boatwrights could take advantage of the GO Zone Act as long as they furnished their unit to make it "serviceable" as a rental unit, and they were guaranteed to make a profit through resell, rental, and/or GO Zone.

27.     Defendants Poulos, Carney and Bon Secour instructed  the Boatwrights to contact Mortgage Solutions South and Thomas Bealle Associates, Inc. ("TB") for appraisal and mortgage services.  TB appraised Unit 705 at $750,000.00, almost $100,000.00 above the purchase price.  The fraudulent and wrongful appraisal allowed Carney and Poulos to earn a commission, Bon Secour made a profit, MSS to earn higher profits and fees, and the appraiser made a profit.

28.     The Boatwrights were instructed that they would be able to take advantage of the GO Zone Act because they were going to rent out their unit, or at least have it "serviceable" for rental, until they sold it.

29.     The closing was scheduled for September 28, 2007.  Defendants Carney, Poulos, and Bon Secour again misrepresented and assured them that the condominium units at Sunset Bay were all sold, the Boatwrights would resell their unit very soon as purchasers were lined up.  And again, when plaintiffs arrived for the closing there were still "sold out" signs everywhere.

30.     At the closing, Poulos was not present, the excuse given was that there had been a death in the family.  No one was present from Mortgage South Solutions, the mortgage company.  The only person present, other than the Boatwrights, was an attorney representing Bon Secour.  The attorney represented that there was no one available from the "usual" firm, and that he had been sent over simply as the messenger, he knew nothing about the papers, but he assured the Boatwrights that

there was nothing new or different in them.  The Boatwrights were instructed to sign the paperwork which they did.  The Boatwrights later discovered that the GO Zone information promised had been left out of the closing documents, when they brought this to the attention of Defendants they acted like they could fix it but never did anything.

31.     After not hearing from Defendants about an end purchaser or receiving any information about the other closings, the Boatwrights became concerned.

32.     On May 28, 2008, the Boatwrights learned that 32 of the 40 units had not been sold as represented, and Sunset Bay was not close to the investment as represented by Defendants. They learned that the representations made to them were indeed all misrepresentations and suppressions of material fact intended to induce them to invest and purchase the condominium unit. They learned that Defendant Bon Secour would be conducting an auction for the 32 unsold units, the asking price would begin at 50% of the listing price, which they paid just 6 months earlier.  The auction was conducted on June 21, 2008, and failed miserably selling only one unit at the lowest possible 50% price.  Then on or about July 14, 2008, the Boatwrights learned that the remaining units were to be operated and managed as rental units with an agent on duty at Sunset Bay.

## COUNT ONE

## VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1861 - ALL DEFENDANTS

33.     Plaintiffs incorporate by reference all other paragraphs of this Complaint and allege that all Defendants engaged in corrupt and illegal racketeering activity and, as set forth above, over period of years in an organized effort to convert opportunities to their own benefit in a series of numerous transactions entered into by Plaintiffs.

34.     The RICO violations directly injured Plaintiffs by causing them to pay a high and inflated price, purchase, and service a condominium unit investment they otherwise would not have but for Defendants corrupt and illegal racketeering activities.

35.     All Defendants participated in the use of the United States Mail and interstate telephone lines in furtherance of their actions as set forth above and all Defendants engaged in a pattern of racketeering activity as defined in 18 U.S.C. §§ 1961-1968.

36.     From 2005 through present, all Defendants, all of whom are persons within the meaning of RICO, were employed by, associated with, and profited from an enterprise whose activities engaged in or affected interstate commerce and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962; to wit, including but not limited to, multiple violations of 18 U.S.C. § 1341 and § 1343.

37.     The members of the group have the same or similar purposes, results, participants, victims, and methods of commission and are interrelated by distinguishing characteristics.  These are not isolated events, but represent a pattern of practice.

38.     All defendants violated 18 U.S.C. § 1341 multiple times, having devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises as contained in the various correspondence, electronic mail communications, various loan documents, loan application, property appraisal, and HUD-1 Settlement Statement.  For the purpose of executing such scheme or artifice or attempting to do so, all or some of the Defendants used the U.S. mail or private or commercial carriers in the furtherance of the scheme.

39. All Defendants violated 18 U.S.C. § 1343 multiple times, having devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate commerce, any writings, signs, signal, pictures, or sounds, for the purpose of executing such scheme or artifice. All Defendants either used interstate wire or reasonably would or should have foreseen the use of interstate wire to further the scheme.

40. The multiple violations of 18 U.S.C. § 1341 and 1343, constitute racketeering activity pursuant to 18 U.S.C. § 1961 and were an integral part of and essential to the success of the scheme.

41. All Defendants knew the scheme could not have succeeded and/or continued without the mailing, providing, or causing the mailing, providing, or communicating of fraudulent information among various Defendants and Plaintiffs.

42. The facts demonstrate that Defendants formed an association-in-fact.

43. The associated persons formed an ongoing organization, formal or informal, concerning the RICO enterprise, and the various associates functioned as a continuing unit of the RICO enterprise, and the RICO enterprise existed separate and apart from the predicate activities themselves. The facts in the case demonstrate the existence of an association-in-fact RICO enterprise by showing that the enterprise has organizational structure or a chain of command, encompassing phases for victim recruitment, investment misrepresentations, fraudulent property appraisals, financing approval, and closing. Defendants used an organized effort to convert this and other opportunities in preconstruction condominium purchase contracts and investments to their own

benefit and to the detriment of the victim.

44.     Plaintiffs were induced into executing the preconstruction condominium purchase agreements and closing on same by the fraudulent misrepresentations, omissions, and suppressions of Defendants.  Those misrepresentations and omissions were reasonably calculated to deceive persons of ordinary prudence and comprehension.  Once the Plaintiffs decided to invest in Bon Secour Island Villas by executing the preconstruction condominium contract, Defendants Poulos, Carney Realty, and Bon Secour actively continued the misrepresentations and suppressions to secure the Plaintiffs full purchase money.

45.     Defendants Bon Secour, Carney Realty, and Poulos guided Plaintiffs, as well as other customers, to Defendants TB and MSS, TB did not conduct a proper property appraisal and inflated property values with its appraisal.  Once the plaintiffs were induced to into the mortgage with Mortgage South Solutions, the appraisal was crucial in the scheme as it established the financing basis, which in turned determined the fees and profit margin for the enterprise participants.

46.     In the next step of the scheme, the Defendants directed the title company, Fairhope Title Services, Inc., to prepare a settlement statement and closing documents based on its fraudulent and false information.  Defendant MSS used the interstate wire service to wire the loan proceeds to the title company.  Defendants used the interstate telephone lines to transfer intentional and fraudulent closing documents on behalf of all Defendants and the enterprise.

47.     The fraud implicates all Defendants who received funds, oversaw the closing, and/or prepared the closing documents, including Poulos, Carney Realty, Bon Secour, TB, and MSS.

48.     All Defendants worked in concert to create a scheme in which all Defendants engaged in a pattern of false representations, some oral and some in writing, to induce the Plaintiffs

and other customers into these same transactions.

49.     The actions of Defendants affected interstate commerce because Defendants are located in Alabama and Plaintiffs are located in Georgia.  Additionally, Defendant Bon Secour's principals reside in Mississippi.   Furthermore, the use of telephone lines, electronic mail communications, facsimiles, mail, and the wiring of funds implicates the enterprise in its affect on interstate commerce.

**WHEREFORE**, premises considered, Plaintiffs demand judgment against Defendants in an amount in excess of the minimal jurisdictional limit of this Court for actual damages, treble damages under 18 U.S.C. § 1964( c), cancellation of the agreement, rescission, return of all deposit monies and payments with interest, compensatory damages, punitive damages, costs, interest, and reasonable attorneys' fees, and such other relief deemed just by the Court.


## COUNT II

### VIOLATIONS OF 18 U.S.C. § 1962(d) - ALL DEFENDANTS

50.     Plaintiff incorporates by reference all other paragraphs of this Complaint and allege that all Defendants, in violation of 18 U.S.C. § 1962(d), conspired to violate 18 U.S.C. § 1962( c).

51.     As set forth above, the facts demonstrate the existence of an agreement among Defendants to engage in RICO violations.

52.     Each Defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of the enterprise through a pattern of racketeering activity.

53.     Each Defendant further agreed that someone would commit at least two predicate

acts to accomplish these goals.

**WHEREFORE,** premises considered, Plaintiffs demand judgment against Defendants in an amount in excess of the minimal jurisdictional limit of this Court for actual damages, treble damages under 18 U.S.C. § 1964( c), cancellation of the agreement, rescission, return of all deposit monies and payments with interest, compensatory damages, punitive damages, costs, interest, and reasonable attorneys' fees, and such other relief deemed just by the Court.

## COUNT III

### VIOLATIONS OF INTERSTATE LAND SALES FULL DISCLOSURE ACT 15 U.S.C. § 1702(a)(2) - ALL DEFENDANTS

54.     Plaintiffs incorporate by reference all other paragraphs of this Complaint and allege that all Defendants, in violation of 15 U.S.C. § 1702(a)(2) employed device, scheme, and artifice to defraud plaintiffs in connection with the sale of their unit.

55.     Defendants  violated 15 U.S.C. § 1703(a)(2) of the *Interstate Land Sales Full Disclosure Act* ("ISLFDA").   Defendants employed device, scheme, or artifice to defraud Plaintiffs. Defendants sought to obtain money and property from Plaintiffs by means of untrue statements of material fact, omissions of material fact, and/or misleading statements.  Said Defendants engaged transaction, practice, or course of business which operated or would operate as a fraud or deceit upon Plaintiffs.

56.     Defendants Carney, Poulos, and Bon Secour misrepresented the number units actually sold to Plaintiffs. Said Defendants had an obligation to inform the Boatwrights that the units were not sold as represented.  Said Defendants also represented that they had the power and would ensure that the Boatwrights investment only went up in value.  Said Defendants represented that the

Boatwrights would not have to close on their unit because end purchasers were lined up. Said Defendants also misrepresented that they had to work out a deal with the previous purchasers of Unit 705 to allow the Boatwrights to "move up" to a more desirable unit. Said defendants misrepresented that their unit had increased in value when in fact they knew, or should have known, that it had not increased during the preconstruction process.

57.     Said Defendants also omitted this information from Plaintiffs, and intentionally, recklessly, and negligently concealed these facts during the preconstruction phase and at closing.

58.     Plaintiffs were unaware of these material facts, and were mislead to their detriment as a result of Defendants' misrepresentations, suppressions, and omissions of material fact.

**WHEREFORE**, premises considered, Plaintiffs demand judgment against Defendants in an amount in excess of the minimal jurisdictional limit of this Court for actual damages, cancellation of the agreement, rescission, return of all deposit monies and payments with interest, compensatory damages, punitive damages, costs, interest, and reasonable attorneys' fees, and such other relief deemed just by the Court.

## COUNT IV

### VIOLATIONS OF ALABAMA UNIFORM CONDOMINIUM ACT § 35-8A-101, *et seq*. - DEFENDANTS POULOS, BON SECOUR, AND CARNEY REALTY

59.     Plaintiffs adopt and incorporate all allegations contained in the paragraphs of the Complaint as if fully set out herein.

60.     Defendants Bon Secour, Carney Realty, and Poulos are subject to the Alabama Uniform Condominium Act, § 35-8A-101, *et seq*, as they are a declarant or affiliates of declarant.

61.     Section 35-8A-413(a)(1) of the Code of Alabama provides as follows:

(1)   ***Any affirmation of material fact*** or material promise ***which relates to the unit***, its use, or rights appurtenant thereto, improvements to the condominium that would directly benefit the unit, or the right to use or have the benefit of facilities not located in the condominium, ***creates an express warranty that the unit and related rights and uses will conform to the affirmation or promise***;

62.   Said Defendants represented to Plaintiffs misrepresented the number units actually sold . Said Defendants had an obligation to inform the Boatwrights that the units were not sold as represented. Said Defendants also represented that they had the power and would ensure that the Boatwrights investment only went up in value. Said Defendants represented that the Boatwrights would not have to close on their unit because end purchasers were lined up. Said Defendants also misrepresented that they had to work out a deal with the previous purchasers of Unit 705 to allow the Boatwrights to "move up" to a more desirable unit. Said defendants misrepresented that their unit had increased in value when in fact they knew, or should have known, that it had not increased during the preconstruction process. These statements created express warranties that would conform to these promises and assurances.

63.   Said Defendants failure to comply with the express warranties constitutes a breach thereof.

**WHEREFORE**, premises considered, Plaintiffs demand judgment against Defendants in an amount in excess of the minimal jurisdictional limit of this Court for actual damages, equitable relief, compensatory damages, costs, interest, and reasonable attorneys' fees, and such other relief deemed just by the Court.

## COUNT V

## BREACH OF FIDUCIARY DUTY AND RELATIONSHIP - CARNEY AND POULOS

64.     Plaintiffs reallege and incorporate all other paragraphs and allegations in this Complaint as if fully set out herein.

65.      An express and/or implied agency relationship existed  between plaintiffs and Defendants Carney and Poulos as Plaintiffs' agent.  Therefore, said Defendants owed Plaintiffs a fiduciary duty to fully inform, communicate, warn, and disclose material facts concerning the condition of, the sale of, and any information that it knew of that would likely affect their purchase decision.  Defendants Poulos and Carney also were under a duty to disclose the fact that the Defendant, Bon Secour, was reserving certain units and had not sold as many units as claimed. Carney and Poulos were acting as the sales agent for Bon Secour and did so in breach of Defendants' fiduciary duty to Plaintiffs.  Defendant Carney and Poulos had a fiduciary duty, as the sole and exclusive agent and representative of Plaintiffs, to be completely loyal and faithful to the Plaintiffs and to provide services in good faith.

66.     Defendants Carney and Poulos, as agents of Plaintiffs, owed fiduciary duties to Plaintiffs.

67.     An express and/or implied agency relationship existed between Plaintiff and Defendant Carney and Poulos with regard to Carney and Poulos' performance of real estate services for, and on behalf of, the Plaintiffs.  Defendants Carney and Poulos had special and specific knowledge of the fact that the Plaintiffs' investment goals could not be met due to the number of units not sold, intended to be withheld and marketed by the developer, and specifically misrepresented the quality of the investment in order to induce and cause the Boatwrights to

purchase their unit.

68.     Defendants Carney and Poulos breached their fiduciary duties owed to Plaintiffs including, but not limited to, to-wit:

(a)     Carney and Poulos negligently, knowingly, willfully and/or wantonly breached their fiduciary duty to Plaintiff by (1) misrepresenting the number of units sold; (2) misrepresenting the investment value of the purchase; (3) misrepresenting the level of interest in the development; (4) having knowledge of and failing to disclose Bon Secour's marketing and sale of other units at a lower price; (5) failing to relay to Plaintiffs the Defendant's lack of intent to sell Plaintiffs' unit or to otherwise maintain it as an investment property; (6) failing to disclose their actions of withholding of units for sale to third parties, to whom Plaintiffs intended to market their unit; (7) misrepresenting and suppressing the true value of the unit; guiding the Boatwrights through a fraudulent appraisal; and (8) and directing and providing the Boatwrights with a mortgage that they did not need and was based on false information.

(b)     Carney and Poulos negligently, knowingly, willfully and/or wantonly breached their fiduciary duty to Plaintiffs by failing to disclose the material facts set forth above with the intent to induce the Plaintiffs to purchase the Sunset Bay Island Villas unit and Plaintiffs, in reliance thereon, did, in fact, purchase said unit based on said Defendants' failure to disclose such material facts.

69.     As agents Defendants Carney and Poulos had a fiduciary duty to put the interests of the Plaintiffs, their principals, above their own.

70.     As a proximate result of the aforesaid said Defendants' breaches the Plaintiffs have been directly and proximately injured and damaged thereby.

**WHEREFORE,** premises considered**,** Plaintiffs demand judgment against Defendants Carney and Poulos for damages, both compensatory and punitive, plus interest from date of the first incident, and all costs of this these proceedings in an amount exceeding the jurisdictional minimum of this Court..

## COUNT VI

## FRAUD - ALL DEFENDANTS

71.     Plaintiffs reallege and incorporate all other paragraphs and allegations in this Complaint.

72.     Plaintiffs allege that Defendants are guilty of fraudulent misrepresentation, suppression and omission.  All Defendants made false representations and suppressions of existing and past material facts; such fraudulent misrepresentations and suppressions were made knowingly, without belief in their truth, or recklessly; and that the Plaintiffs reasonably relied upon them and suffered damages to their detriment as a result of such reasonable reliance.  Defendants Carney, Poulos, and Bon Secour  misrepresented the number units actually sold .   Defendants had an obligation to inform the Boatwrights that the units were not sold as represented.  Said Defendants also represented that they had the power and would ensure that the Boatwrights investment only went up in value.  Said Defendants represented that the Boatwrights would not have to close on their unit because end purchasers were lined up.  Said Defendants also misrepresented that they had to work

out a deal with the previous purchasers of Unit 705 to allow the Boatwrights to "move up" to a more desirable unit.  Said defendants misrepresented that their unit had increased in value when in fact they knew, or should have known, that it had not increased during the preconstruction process. These statements created express warranties that would conform to these promises and assurances. TB and MSS made false representations via the fraudulent appraisal, loan documents, and in the settlement statements.

73.     The fraud of all Defendants is evident in the correspondence, electronic mails, appraisal documents, and loan documents.  Plaintiffs innocently and reasonably relied on the fraudulent statements and acts to their detriment.

74.     Defendants suppressed the material facts set forth above with the intent to induce the Plaintiffs to purchase the condominium unit made the basis of this lawsuit and Plaintiffs did, in fact, purchase said condominium unit based on the Defendants' suppression of such material facts.  The failure of the Defendants to inform the Plaintiffs of the facts concerning the pre-sale of other units and inferior materials and development plan, when Defendants knew that the Plaintiffs were purchasing the property merely for investment and for resale to end users and/or third parties, and the fact that the Defendants failed to disclose such facts to the Plaintiffs was a suppression of material facts, which the Defendants had a duty to communicate to the Plaintiffs.  The Defendants' suppression constitutes legal fraud.

75.     Plaintiffs believed said suppressions and relied upon them in signing the Purchase Agreements for the Sunset Bay units.  These Defendants made these suppressions in order to simply secure the sale of the units marketed and sold to the Plaintiffs at a premium price.  This was a pattern and practice of these Defendants.

76.    Defendants misrepresented and suppressed these facts to the Plaintiffs for the purpose of fraudulently inducing Plaintiffs to sign the Purchase Agreements.    Defendants' fraudulently misrepresented and suppressed, in violation of the *Code of Alabama*, §§ 6-5-101, 6-5-102, 6-5-103, and 6-5-104, material facts.

77.    As a proximate result of the aforementioned wrongful and fraudulent conduct of Defendants, Plaintiffs have suffered damages as heretofore described.

78.    The representations made by the Defendants were false and these Defendants knew they were false; Defendants negligently, willfully, wantonly, intentionally and/or recklessly misrepresented the facts; Defendants made promises and representations that were false and they knew they were false; or Defendants recklessly and without true knowledge thereof; and/or these Defendants misrepresented the facts by mistake, but did so with the intention that Plaintiffs should rely upon them.

79.    Defendants consciously and/or deliberately engaged in oppression, fraud, deceit, wantonness and/or malice with regard to Plaintiffs, and took advantage of their superior knowledge and agency relationship, which resulted in damage to and thereby depriving Plaintiffs of their legal rights and entitling Plaintiffs to punitive damages.

80.    Plaintiffs further aver that Defendants are guilty of conduct evincing a pattern and practice of intentional misconduct. Plaintiffs demand judgment against Defendant for damages, both compensatory and punitive, plus interest from date of the first incident, and all costs of this these proceedings in an amount exceeding the jurisdictional minimum of this Court.

## COUNT VII

## NEGLIGENCE AND WANTONNESS - ALL DEFENDANTS

81.    Plaintiffs reallege all other paragraphs and allegations contained in this Complaint.

82.    Plaintiffs aver that Defendants Poulos and Carney owed them a duty to exercise due and reasonable care in, and throughout the performance of real state services for Plaintiffs and on Plaintiffs' behalf.

83.    Plaintiffs aver that the Defendants Carney and Poulos breached said duty by failing to exercise due and reasonable care in and throughout the performance of real estate services for the Plaintiffs, but failing to report, warn and disclose to Plaintiffs about the developer withholding units to market and sale in direct competition with the Plaintiffs' investment opportunity and further that Defendants Carney and Poulos failed to act within their fiduciary capacities as a representative of the Plaintiffs.

84.    Plaintiffs aver that Defendants' Carney and Poulos failure to fully inform the Plaintiffs constitute negligence, gross negligence and/or wantonness entitling Plaintiffs to recover punitive damages.

85.    Defendants Bon Secour, Poulos and Carney owed a duty and special duty to Plaintiffs due to their relationship as developer, seller, and agent. Defendants had a duty to disclose all material facts, costs, and changes that would affect Plaintiffs' decision to purchase, to not act in a negligent and wanton manner toward Plaintiffs, and to promptly return all required money to Plaintiffs. Defendant TB negligently and wantonly performed appraisal services. Defendant MSS negligently and wantonly failed to perform its mortgage services and due diligence in approving the Boatwrights loan. MSS negligently and wantonly failed to determine that the property value was correct and as represented, negligently and wantonly relied on a flawed appraisal, and negligently

and wantonly failed in their duties at closing.

86.     Defendants negligently and wantonly misrepresented that the development at Sunset Bay was to be constructed in a style, manner and workmanship consistent with the rest of the Sunset Bay at Bon Secour development, being houses and structures in the immediate area and planned development related thereto, which was to be the same materials and design, general appearance and to be constructed in a reasonable appearance and quality thereof to make the units desirable for investors, subsequent purchasers, and as vacation homes and/or rental investment properties.

87.     As a proximate result of Defendants' negligence and wantonness Plaintiffs have suffered damage, and will suffer substantial financial harm, and has suffered and continues to suffer mental anguish and stress.

**WHEREFORE,** premises considered, Plaintiffs demand judgment against Defendants for damages, both compensatory and punitive, plus interest from the date of this incident  in such sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount in excess of the jurisdictional minimum of this Court.

## COUNT VII

## CONSPIRACY - ALL DEFENDANTS

88.     Plaintiffs reallege all other paragraphs and allegations contained in this Complaint and allege that Defendants agreed by and between each other to engage in a scheme to obtain money from Plaintiffs and other consumers.

89.     All Defendants combined and acted in concert to obtain money form Plaintiffs and other consumers by engaging in a series of fraudulent misrepresentations, suppressions, omissions, and/or transactions.

90.     Defendants did the acts and things herein pursuant to, and in furtherance of, the conspiracy and the above alleged agreement.

91.     Defendants intended to accomplish this common purpose and knew of each other's intent to accomplish this common purpose.

92.     As a proximate result of the wrongful conspiracy, Plaintiff has been damaged as previously set forth herein.  Defendants did the acts herein alleged maliciously and to oppress Plaintiffs. Plaintiffs are therefore entitled to exemplary or punitive damages.

93.     Each Defendant conspired to unlawfully take and convert to his/her/its own use certain property of Plaintiff. Each conspirator is responsible for the acts of each of the other conspirators.

94.     Not one of the Defendants has abandoned the conspiracy.

**WHEREFORE,** premises considered, Plaintiffs demand judgment against defendants for damages, both compensatory and punitive, plus interest from the date of this incident  in such sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount in excess of the jurisdictional minimum of this Court.


Respectfully Submitted,

 /s/ Adam M. Milam
ADAM M. MILAM   (MILAA2597)
SHELLEY H. MILAM   (MILAS8958)
Attorneys for Plaintiffs, James and Janice Boatwright

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY IN THE ABOVE ENTITLED CASE.**

                                \_\_\_/s/ Adam M. Milam_____
                                ADAM M. MILAM

OF COUNSEL:

MILAM & MILAM, LLC
Post Office Box 1454
Fairhope, Alabama 36533
(251) 928-0191
(251) 928-0193 fax
amilam@milam-law.com
smilam@milam-law.com


**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL,
RETURN RECEIPT REQUESTED AS FOLLOWS:**

Bon Secour Development, L.L.C.
c/o Registered Agent Steve H. Bryan
16850 County Road 6 Ext.
Gulf Shores, Alabama 36542

Carney Realty, Inc.
c/o Registered Agent Shirley J. Poulos
16840 County Road 6 Ext.
Gulf Shores, Alabama 36542

Thomas Bealle Associates, Inc.
c/o Registered Agent Thomas Bealle
1702 B Government Street
Mobile, AL 36604

Mortgage Solutions South, LLC
c/o Registered Agent James Lynn Perry
30421 HWY 181 Malbis Plantation Pkwy
Daphne, AL 36526

**DEFENDANTS TO BE SERVED VIA SHERIFF:**

Shirlee Poulos
500 West Beach Blvd.
Gulf Shores, AL 36542